## Hess *versus* Hess.

1. A devise was (after the death of testator's widow), "my son E. (to) have one-third of all my real and personal property during his single life, if he should marry and have issue then I desire on condition he pay the foregoing legacies, that he shall have one-half of all my real and personal property to be his for ever. My son D. and daughter N. (to) have each one-third of all my real and personal property during the single life of my son E., but if he should marry and have issue, then it is my will that D. and N. have each one-fourth of all my real property, to be enjoyed by them during their lives. I desire that the survivor enjoy the portion of the other during natural life, after which it is my will that their respective portions be the property of my son E. absolutely, provided he have lawful issue, as above stated. There was no gift over." *Held*, that E. took a life estate in one-third (subject to the widow's life estate), and if he should marry and have issue, the whole real estate absolutely, with right to the possession of one-half on his mother's death, and subject to the life estates of D. and N. and the survivor in the other half.

2. E. having issue was a condition precedent to the vesting of the estate in fee.

3. E. married, survived his wife and died without having had issue; the fee descended upon the testator's heirs at law.

4. Two of the heirs were legatees whom E. was to pay. They received their legacies from him and released all claim against the estate. *Held*, that they were not estopped from claiming their shares in the land.

5. The payment of the legacies did not enlarge E.'s estate nor change its character, for the contingency upon which his estate was to vest in fee had not occurred.

November 18th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1870, No. 183.

This was an action of ejectment brought November 16th 1867, by John Hess and James Hess against David Hess and Nancy Hess for a tract of 95 acres of land. The land had belonged to George Hess deceased, who died October 21st 1868, leaving a widow and six children, Nancy and David (the defendants), John and James (the plaintiffs), Ebenezer and Margaret. The decedent left a will dated December 10th 1856, containing as follows:— * * *

"It is my will and desire that my beloved wife Mary have all my real and personal property, to be enjoyed by her during her natural life, after which I desire the following disposition to be made.

"It is my will that my son John have one hundred dollars out of my estate, within four years after the death of the survivor of his parents, without interest; * * * to be in addition to what I have heretofore given him.

"It is my will that my daughter Margaret, intermarried with Samuel McCormick, have four hundred dollars out of my estate, within four years after the death of survivor of her parents,

[Hess *v.* Hess.]

without interest; * * to be in addition to what I have heretofore given her.

"It is my will that my son James have two hundred dollars out of my estate, within four years after the death of the survivor of his parents, without interest; * * * to be in addition to what I have heretofore given him.

"It is my will that my grandson George (son of John) have one hundred dollars out of my estate, on the same terms and conditions as in his father's case above mentioned.

"It is my will, after the death of the survivor of his parents, my son Ebenezer have one-third of all my real and personal property during his single life; but if he should marry and have lawful issue, then I desire, on condition that he pay the foregoing legacies as above stated, that he shall have one-half of all my real and personal property, to be his for ever, in addition to what I have heretofore given him.

"It is my will that, after the death of the survivor of their parents, my son David and my daughter Nancy have each one-third of all my real and personal property during the single life of my son Ebenezer; but if he should marry and have lawful issue, then it is my will and desire that the said David and Nancy have each one-fourth of all my real property, to be enjoyed by them during their and each of their natural lives; and I desire that the survivor of them enjoy the portion of the other during natural life, as before expressed, after which it is my will and desire that their and each of their (David and Nancy's) respective portions be the property of my son Ebenezer absolutely, provided he have lawful issue, as above stated.

"It is my will and desire absolutely, that the above-named David and Nancy may not, nor shall not, dispose of the interest I have herein bequeathed to them by any contract they may make, or any one may make for them, but it shall remain in said farm during their and each of their natural lives."

Ebenezer paid the legacies under his father's will to John and James, and took from them these receipts:—

"Received, December 9th 1858, of Ebenezer Hess, the sum of one hundred dollars, in full of legacy bequeathed to me by George Hess, deceased, including the fifty dollars due from my grandfather's estate; and I hereby release and quit-claim all demands against said estate.

"Witness my hand and seal.

"JOHN HESS. [L. S.]"

"Received, December 30th 1858, of Ebenezer Hess, the sum of one hundred and seventy-nine dollars, legacy bequeathed to me by George Hess, deceased (my father), including fifty dollars

[Hess *v.* Hess.]

due from my grandfather's estate. And I hereby release and quit-claim so much of said estate.

"JAMES HESS."

At his father's death Ebenezer was a single man. He married in 1859, and, having survived his wife, died October 21st 1864, without having had any children.

He made a will, dated October 14th 1864, by which he gave to his sister Nancy and brother David all his real and personal estate, or "any interest in the same that may be coming to me from my father's or mother's will, or from any other source whatsoever." The widow of George Hess died November 6th 1865.

On the trial, January 18th 1870, before Gilmore, P. J., the foregoing facts were given in evidence.

The plaintiff submitted these points, which were affirmed:—

1. Under the will of George Hess, deceased, Ebenezer took a life estate in one-third of the real estate, subject to the life estate of the widow, with a contingent estate in fee in *one-half*, and also in the other half upon the death of David and Nancy, dependent upon a contingency which never occurred (his marrying and *having issue*). He also took by inheritance from his father one-sixth of the real estate in fee.

2. David and Nancy each took a *life* estate in one-third of the real estate under the will; and by inheritance from their father each one-sixth in fee, and under the will of Ebenezer they took the one-sixth which he inherited; thus they own a life estate in two-thirds, and the fee in three-sixths or one-half.

3. John, Margaret and James each took by inheritance from their father one-sixth of the real estate.

4. John and James, the plaintiffs, are entitled to the undivided one-third of the real estate in fee.

The defendants submitted these points, which were refused:—

2. The devise of the fee to Ebenezer, "if he have issue," vested in him at the death of the testator, George Hess, an estate tail in the land in dispute, which, by the Act of 1855, was converted into a fee simple.

3. The marriage of Ebenezer Hess was of itself sufficient to vest in him the fee in the one-half of the land in dispute.

4. The acceptance by the plaintiffs from Ebenezer of the legacies which he was to pay to them only upon his being the owner of the fee in one-half the land in dispute, estops them from claiming that he was entitled to or had less than such one-half.

The verdict was for the plaintiffs "for the undivided two-sixths of the land, subject to the present possession of the defendants in the undivided five-sixths of said two-sixths."

The defendants took a writ of error, and assigned for error the answers to the points.

[Hess *v*. Hess.]

*C. E. Boyle* and *D. Kaine*, for plaintiffs in error.—A will must be so construed as, if possible, to avoid intestacy : 1 Jarman on Wills 767, 768 ; Bayard *v*. Atkins, 10 Barr 15. The law prefers a vested to a contingent estate : Womrath *v*. McCormick, 1 P. F. Smith 504 ; Mining *v*. Batdorf, 5 Barr 503 ; Smith's Appeal, 11 Harris 9 ; and the absolute vesting of an estate at the earliest moment, so that it shall be available to the primary object of the testator's bounty : Burd *v*. Burd, 4 Wright 182 ; Rewalt *v*. Ulrich, 11 Harris 388 ; Middleswarth *v*. Collins, 1 Phila. 139. The absence of a devise over affords strong evidence that the testator did not intend the non-vesting of the estate of one who appears to be his ultimate devisee : Hansell *v*. Hubbell, 12 Harris 246 ; Shutt *v*. Rambo, 7 P. F. Smith 151 ; Sheets's Estate, 2 Id. 264 ; Roberts's Appeal, 9 Id. 72 ; Steiner *v*. Kolb, 7 Id. 124. Subsequent events cannot be taken into consideration to aid in arriving at a past intention : Middleswarth *v*. Collins, 1 Phila. 142. To determine whether Ebenezer took an estate tail, the provision concerning marriage may be disregarded under the cases of Vaughan *v*. Dickes, 8 Harris 509 ; Matlack *v*. Roberts, 4 P. F. Smith 148 ; Eichelberger *v*. Barnitz, 9 Watts 447 ; Carter *v*. McMichael, 10 S. & R. 429 ; Paxson *v*. Lefferts, 3 Rawle 72 ; Price *v*. Taylor, 4 Casey 95 ; Rancel *v*. Cresswell, 6 Id. 158 ; Allen *v*. Henderson, 13 Wright 345 ; Haldeman *v*. Haldeman, 4 Id. 29 ; Maurer *v*. Marshall, 4 Harris 379 ; George *v*. Morgan, Id. 99 ; Wynn *v*. Story, 2 Wright 168 ; Heffner *v*. Knepper, 6 Watts 21 ; Potts's Appeal, 6 Casey 168 ; Criley *v*. Chamberlain, Id. 161 ; Curtis *v*. Longstreth, 8 Wright 302 ; Stehman's Appeal, 9 Id. 402 ; Caldwell *v*. Skilton, 1 Harris, 152 ; Heilman *v*. Bouslaugh, Id. 344. Courts change, add or disregard words when necessary to make the will harmonious, and accomplish the main intent of the testator : Holmes *v*. Holmes, 5 Binn. 252 ; Scott *v*. Price, 2 S. & R. 59 ; Welsh *v*. Elliott, 13 Id. 205 ; Shoofstall *v*. Powell, 1 Grant 20 ; Beltzhoover *v*. Costen, 7 Barr 15 ; 1 Jarman on Wills 495, 446, 450 ; Mytton *v*. Boodle, 6 Sim. 457. Receiving their legacies estopped the plaintiffs : Hoover *v*. Hoover, 5 Barr 354 ; Ackla *v*. Ackla, 6 Id. 231 ; Hagerty *v*. Albright, 2 P. F. Smith 279.

*A. E. Willson* (with whom was *J. Collins*), for defendants in error, cited Stitt *v*. Spear, 3 Grant 306 ; Vanhorne *v*. Dorrance, 2 Dallas 304 ; Cheeseman *v*. Wilt, 1 Yeates 411 ; Hauer *v*. Sheetz, 2 Binney 532 ; Lipman's Appeal, 6 Casey 180 ; Walker *v*. Walker, 4 Id. 40 ; Malone *v*. Dobbins, 11 Harris 296 ; Cowles *v*. Cowles, 3 P. F. Smith 175.

The opinion of the court was delivered, January 3d 1871, by
WILLIAMS, J.—All the assignments of error, except the last,

[Hess v. Hess.]

present but one question, and that is: What estate did Ebenezer Hess take under the will of his father, George Hess, in the land devised to him? By his will, dated December 10th 1856, the testator gave to his wife all his real and personal property to be enjoyed by her during her natural life; and, after giving certain specific legacies to his three children, John, Margaret and James, and to his grandson George, devised his real and personal estate as follows: It is my will, after the death of the survivor of his parents, my son Ebenezer have one-third of all my real and personal property during his single life; but if he should marry and have lawful issue, then I desire, on condition that he pay the foregoing legacies, viz., John, Margaret, James and grandson George, as above stated, that he shall have one-half of all my real property, including one-half of all the buildings on the farm on which I now live to be his for ever, in addition to what I have heretofore given him. It is my will that after the death of the survivor of their parents, my son David and daughter Nancy have each one-third of all my real and personal property during the single life of my son Ebenezer; but if he should marry and have lawful issue, then it is my will and desire that the said David and Nancy have each one-fourth of all my real property on which I now live, including one-fourth of all the buildings, to be enjoyed by them during their and each of their natural lives; and I desire that the survivor of them enjoy the portion of the other, during natural life, as before expressed; after which it is my will and desire that their and each of their (David and Nancy's) respective portions be the property of my son Ebenezer absolutely, provided he have lawful issue, as above stated. The testator died on the 21st of October 1858. At the date of the will, and at his father's death, Ebenezer Hess was a single man, but married in the fall of 1859. No children were born to him; his wife died in November 1862; he died October 21st 1864, and his mother, November 6th 1865. What estate, then, did he take under the will of his father? Was it an estate tail in the whole land subject to the life estate of his mother therein, and to the life estates of his brother and sister and the survivor of them; or was it an estate for life in the one-third of the land, subject to his mother's life estate, and an estate in fee in the whole land contingent upon his marriage and having issue, subject to the life estates given to his brother and sister and the survivor of them? What, then, was the intention of the testator? for his intention, as gathered from the whole will, must govern in its construction unless it is overruled or set aside by some positive and well-settled rule of law.

It is clear then that, after the life estate given to his wife, he intended that his son Ebenezer should have the one-third of his real estate so long as he remained single, and that his son David and daughter Nancy should have each the one-third of his estate

during the same period, for he has said so in express terms; and it is quite as evident, from the provisions which immediately fol‑ low both devises, that he intended that each of the three devisees should have the one-third of the estate so given until his son Ebenezer should marry and have lawful issue; and if these con‑ tingencies should occur that then, on condition of his paying the legacies given in the will, he should have the one-half of all his real property, with the right to its immediate possession and enjoy‑ ment on the death of his mother, to be his for ever; and, if said contingencies should happen, that David and Nancy should have each, instead of the one-third, the one-fourth of all his real pro‑ perty during their and each of their natural lives, and that, upon the death of either, the survivor should enjoy the portion of the other during his or her natural life; and on the death of the survivor the said respective portions should be the property of his son Ebenezer absolutely. This is the plain and manifest inten‑ tion of the testator. There can be no doubt that he intended his son Ebenezer should, in any event, have a life estate in the one-third of his real property, subject to the previous life estate given to his mother; and if he should marry and have lawful issue that then, on condition of his paying the legacies, he should have the whole of his real estate to be his absolutely and for ever, subject to the life estate of his mother, with the right to the immediate pos‑ session and enjoyment of the one-half thereof upon her death, and subject to the life estates of his brother and sister, and the survivor of them in the other one-half of said property. Is there then any rule of law which defeats the intention of the testator as expressed in his will? The plaintiffs in error contend that the devise to Ebenezer comes within the rule in Shelley's Case, and that under it he took an estate tail in the whole property, which vested in him immediately on the death of his father. Has the testator then made use of such a form of words as *proprio vigore* creates an estate tail, either in express terms or by necessary implication, contrary to the manifest intention of the testator? The rule in Shelley's Case is a rule of property and not a rule of construction, and is never applied to a devise unless the testator has used such words as, in and of themselves, create an estate tail, and no words are found in this will which, either in express terms or by neces‑ sary implication, create such an estate. The devise here is wholly unlike those in the cases cited by the counsel of the plaintiffs in error. There is no gift or devise of the property to Ebenezer and his issue; nor is there any gift or devise of it to him for life with a devise over, in default of lawful issue or in the event of his dying without issue. Neither is there any absolute gift of the fee, coupled with such words of limitation as would cut down the devise to an estate tail. A contingent estate only is given by the will, and it could not vest without the happening of the contin‑

gencies upon which the gift was to take effect. Whenever these events should occur the whole estate in fee would, by the express provisions of the will, immediately vest in the devisee, and not before, and no other or less estate than the whole fee could possibly vest. The estate given by the will was only to commence provided the devisee had lawful issue, not to terminate, or go over if he had no issue, or should die without issue. His having issue was a condition precedent to the vesting of the estate and not a condition subsequent by which it was to terminate. Marriage and the birth of issue were essential to the existence of the estate, and not conditions limiting or affecting its quality or duration. When real or personal estate, says Mr. Smith in his work on Executory Interests, is devised or bequeathed to a person, when or as soon as he shall obtain a given age, or when an event shall happen which may never occur at all, or at, or upon, or from and after his obtaining such age, or the happening of such event; and there are no other words indicative of an intent to confer a vested interest; and nothing in the form of the limitation itself to indicate an intent merely to delay the vesting in possession or enjoyment, and no disposition of the intermediate income; in such case, the interest of the devisee or legatee will be contingent until he attains the age specified, or the event described has happened. For, although in this case the person is ascertained, yet the property is only given at a future period which may never arrive; and the gift can no more attach upon him before that period, than it could, if the testator, continuing to live, were to defer making a devise or bequest till such period had actually arrived: Smith on Ex. Int. §§ 285–6. It is clear then that, under the provisions of the will, Ebenezer took only a contingent estate in fee, and that having died without ever having lawful issue, the estate did not vest in him, and as there was no devise over, in the event of his not having lawful issue, the fee descended, upon the death of the testator, to his heirs at law. The plaintiffs are therefore entitled, as his heirs, to the undivided two-sixths of the land in controversy, subject to the life estates of David and Nancy therein. Nor are they estopped from claiming the land by the acceptance of the money paid them by Ebenezer on account of the legacies given to them in the will. They were not paid in performance of the condition upon which he was to have the whole estate in fee, for the contingencies upon which the property could only become his, had not occurred. The payment of the legacies could neither enlarge the estate given to him by the will nor change its character. It could only give a title to the land in the event of the happening of the contingencies upon which the estate was to vest. The plaintiffs might lawfully receive the legacies, and there is nothing in the act of their acceptance under the circumstances to prevent them from claiming title to the land. The court was

[Hess *v.* Hess.]

therefore right in the construction given to the will, and in charging the jury that the plaintiffs below were not estopped from claiming the land by the acceptance of the legacies.

Judgment affirmed.